## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

TAYLOR WOODROW COMMUNITIES AT
VASARI, LLC, a/k/a TAYLOR MORRISON
CONSTRUCTION COMPANY,

                 Plaintiff/Counter-Defendant,

vs.

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation,

              Defendant/Counter-Claimant.

_____/

CASE NO: 2:09-cv-00823-JES-DNF

**DISPOSITIVE MOTION**

### MID-CONTINENT CASUALTY COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST TAYLOR WOODROW COMMUNITIES AT VASARI, LLC, A/K/A TAYLOR MORRISON CONSTRUCTION COMPANY AND MEMORANDUM OF LAW

      Defendant, Mid-Continent Casualty Company ("MCC"), pursuant to Fed. R. Civ. P. 12 and Local Rule 3.01, moves for judgment on the pleadings in its favor and against Plaintiff, Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company (hereinafter collectively "Communities at Vasari") on the grounds that MCC does not have a duty to defend and indemnify Communities at Vasari. The grounds for this motion are set forth in the attached Memorandum of Law.

### STATEMENT OF UNDISPUTED FACTS

      1.     MCC entered into contracts of insurance with Cothern Construction Company ("Cothern"), policy nos. 04-GL-000672125 (1/10/2007 to 1/10/2008) and 04-GL-000701763 (1/10/2008 to 1/10/2009) (the "MCC Policies"). Copies of the Policies are attached as Composite Exhibit "C" to MCC's Counterclaim/Third-party Complaint (DE 33).

14494696v1  0904250  56475

2.      Cothern contracted with Taylor Woodrow Communities at SW Florida Division ("Taylor Woodrow") to install drywall in a community consisting of residences known as Vasari Country Club in Lee County, Florida (the "Project"). A copy of the subcontract is attached as Exhibit "A" to MCC's Counterclaim/Third-party Complaint (DE 33).

3.      Cothern did not enter into a subcontract with Communities at Vasari for the installation of drywall. (DE 33, Exhibit A, ¶ 9).

4.      Under the construction contract, Cothern was to procure the following type of insurance:

> Commercial general liability insurance (to include "completed operations" coverage) including Contractor and Subcontractor against liability for injury to persons (including death) and damage or destruction of property arising out of the Work (without regard to the negligence or breach of any duty by Contractor or Subcontractor or their respective employees). The policy shall be issued on an occurrence basis with limits, as to each risk, of not less than the amount se forth on Schedule "A," or such greater amount as then prevails in any like coverage carried by Subcontractor.
>
> ***
>
> Prior to starting Work, Subcontractor shall deliver to Contractor (at the address indicated on the first page of this Agreement), certificates showing the required insurance are in effect and that the premiums have been paid for the expected duration of the Subcontractor's Work. Each policy shall require at least (30) days prior written notice to Contractor of premiums being due for payment, lapse of insurance, changes in coverage or any other change affecting protection provided by the insurance. In addition, each policy (other than workers compensation insurance and employer's liability) shall include Contractor as an additional insured….

(DE 33, Exhibit "A," ¶ 4, p. 4.).

5.      Schedule "A" of the construction contract reads:

## SCHEDULE "A"

## INSURANCE REQUIREMENTS

The following are the necessary insurance requirement for all subcontractors working for Taylor Woodrow Communities SW Florida Division. Taylor Woodrow Communities SW Florida Division must be named "additional insured" under A) COMMERCIAL GENERAL LIABILITY and B) AUTOMOBILE LIABILITY.

***

**D)      Certificate Holder**

**Taylor Woodrow Communities SW Florida Division**
8430 Enterprise Circle, Suite 100
Bradenton, Florida 34202.

6.      The MCC Policies contain the following relevant  provisions:

**COVERAGE   A   BODILY   INJURY   AND   PROPERTY   DAMAGE LIABILITY**

**1.      Insuring Agreement**

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or  "property damage" to which this insurance doe not apply.  We may at our discretion investigate any occurrence" and settle any claim or "suit" that may result. But:

        (1)      The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        (2)      Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

    b.      This insurance applies to "bodily injury" and "property damage" only if:

        (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)      The "bodily injury" or "property damage" occurs during the policy period;

3

> (3)   Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part (….)

> c.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

***

7.   The MCC Policy No. 04-GL-0006272125 has the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OWNERS, LESSEES OR CONTRACTORS ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

**TAYLOR WOODROE SW FLORIDA DIVISION**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

*Policy #04-GL -000672125 - Form ML 12 15 (11 04) - Page 1 of 1*

8.   The MCC Policy No. 04-GL -000701763 has the following endorsement:

14494696v1  0904250  56475

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OWNERS, LESSEES OR CONTRACTORS ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

> **Taylor Woodroe SW Florida Division**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

*Policy #04-GL -000701763 - Form ML 12 15 (11 04) - Page 1 of 1*

***

# OWNERS, LESSEES OR CONTRACTORS—SCHEDULED PERSON OR ORGANIZATION--ADDITIONAL INSURED[1]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

**TAYLOR MORRISON OF FLORIDA INC**

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

---

[1]     This endorsement became effective as of 7/21/08.

14494696v1  0904250  56475

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of ongoing operations for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

*Policy #04-GL -000701763 - Form ML 12 14 (07 01) - Page 1 of 1*

(Collectively the AI Endorsements).

\* \* \*

9.     The MCC Policies name Taylor Woodroe SW Florida Division and Taylor Morrison of Florida Inc (as of 7/21/08 and for ongoing operations) as additional insureds. (DE 33, Exhibit C).[2]

10.     On August 21, 2009, Communities at Vasari sued MCC seeking to establish there is coverage for Communities at Vasari under the MCC Policies issued by MCC to Cothern for the allegedly defective work performed by Cothern. (DE 3 and 34).

11.     On April 20, 2010, MCC filed a counterclaim/third-party complaint against Communities at Vasari and Cothern. (DE 33).

12.     In its answer to the counterclaim/third party complaint, Communities at Vasari admitted that Taylor Woodrow and not it entered in the construction subcontract with Cothern. (DE 37 at ¶ 7).

13.     Communities at Vasari amended its complaint to allege counts for declaratory relief, breach of contract and reformation. (DE 34, pp. 4-7).

---

[2]     The Court may want to know that Taylor Woodrow Homes SW Florida Division is an active company according to Florida Department of State Division of Corporations. A copy of the *sunbiz* printout is attached as Exhibit "A." Communities at Vasari is a separate and distinct active company according to Florida Department of State Division of Corporations. A copy of the *sunbiz* printout is attached as Exhibit "B." The State's records do not indicate that Communities at Vasari is a/k/a Taylor Morrison Construction Company.

14494696v1  0904250  56475

14.     Communities at Vasari alleged that it is an additional insured under the MCC Policies. *Id*. ¶ 15.

## MEMORANDUM OF LAW

### I.      Standard For Judgment On The Pleadings

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).  A complaint can be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996).

### II.     MCC Is Entitled To Judgment On The Pleadings

Communities at Vasari's Complaint against MCC fails because Communities at Vasari is not an additional insured and, consequently, is not entitled to coverage under the insurance contracts.  Its assertion that it is an additional insured under the policies and that MCC has breached the contracts is meritless and ignores Florida's long-established rules of contract construction. Further, reformation of the MCC Policies is improper because Communities at Vasari does not have standing to reform the policies. Moreover, the complaint does not allege MCC was ever advised the policies were to include Communities at Vasari and, therefore, there was no mutual mistake.  Finally, Communities at Vasari as a stranger to both the subcontract and MCC Policies does not qualify as a third-party beneficiary as a matter of law.

### A.      MCC Is Entitled to Judgment On The Pleadings As To Counts I, II and III and Its Counterclaim As Communities At Vasari Is Not An Additional Insured Under The MCC Insurance Contracts

Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of an insurance policy.  *Fabricant*

*v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007). The scope and extent of insurance coverage is defined by the language and terms of the insurance policy, and where the language of a policy is plain and unambiguous, the contract must be enforced as written. *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002). This rule of construction "does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Swire Pac. Holdings, Inc. v. Zurich Ins., Co.*, 845 So. 2d 161, 165 (Fla. 2003) (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla.1979)); *Harris v. Cotton States Mut. Ins. Co.*, 821 So. 2d 1211, 1214 (Fla. 1st DCA 2002). A party's secret hopes and wishes count for nothing because the status of a contract depends on what the parties express to each other and to the world, not on what they keep to themselves. *Sea-Land Service, Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1262 (S.D.Fla. 1999).

This case can be resolved by a simple examination of the MCC Policies. Under the MCC Policies, there are three entities that were named as additional insureds: 1) Taylor Woodroe SW Florida Division, 2) Taylor Morrison of Florida Inc, and 3) The Weltz Company LLC d/b/a Weltz Golf International.[3] Under policy no. 04-GL-0006272125, the only additional insured listed is Taylor Woodroe SW Florida Division, an incorporated entity in Florida. (*See* Exhibit A).[4] Under policy no. 04-GL-000701763, the only entity named as additional insured is Taylor

---

[3]   The Weltz Company LLC d/b/a Weltz Golf International's additional insured status is not at issue in this case.

[4]   In the Amended Complaint, Communities at Vasari states that Taylor Woodroe SW Florida Division does not exist. It presumably makes this statement because in the Policies Woodrow is spelled Woodroe. This, however, is of no consequence. Even though Woodroe should have been spelled Woodrow, that does not mean that MCC ever intended to insure Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company. Taylor Woodrow SW Florida Division is an active corporation and if the Plaintiff was that entity, as opposed to Communities at Vasari, perhaps then there would be some basis for Plaintiff's claims in this action.

14494696v1  0904250  56475

Morrison of Florida Inc,[5] another incorporated Florida company. (Exhibit A).   Notably, Communities at Vasari does not allege, nor can it, that "Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company" is an additional insured under the MCC Policies.   Instead, it asserts that Cothern was contractually "required to obtain insurance policies for the work performed under the subcontract and to have Plaintiff [Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company] named on the Subcontractor's liability insurance policies as an additional insured." (Amended Complaint ¶ 7). Next, it alleges that "Plaintiff is an additional insured and certificate holder on the Policies" (*Id*. ¶ 15), and attaches policy no. 04-GL-000672125 for evidence that it is an additional insured and a certificate holder. (*Id*.).   Based on the actual subcontract between the parties this is misleading at best.

The subcontract was between Cothern and Taylor Woodrow Communities at SW Florida Division. (*See* DE 33, Exhibit A).   It is not between Cothern and Communities at Vasari. Further, the MCC Policies name Taylor Woodroe SW Florida Division and Taylor Morrison of Florida Inc., as additional insureds subject to certain conditions.[6]  Nowhere in the MCC Policies is there any reference to Taylor Woodrow Communities at Vasari, LLC or Taylor Morrison Construction Company—two different and active companies incorporated in Florida. Communities at Vasari does not allege that it is somehow misnamed in the construction subcontract or that it is the same company actually named as one of the additional insureds in the MCC Policies, nor has it identified any policy provision extending coverage to Communities at

---

[5]      They are the managing agent of Taylor Woodrow Homes SW Florida Division. *See* Exhibit A.

[6]      One condition in both endorsements is only when you (Cothern) have agreed by written "insured contract" to name that organization as an additional insured. Here, Cothern agreed to name Taylor Woodrow Communities at SW Florida Division, not the Plaintiff in this action, Taylor Woodrow Communities at Vasari, LLC.

14494696v1  0904250  56475

Vasari. It simply asserts, without basis, that "Plaintiff" was to be named as an additional insured. This allegation is contradicted by the subcontract between Cothern and Taylor Woodrow. *Morris v. City of Orlando,* 2010 WL 4646704 at *5 (M.D. Fla. 2010) (Where the exhibits contradict the general and conclusory allegations of the complaint, the exhibits control. citing *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007). Consequently, MCC has no obligation to defend and indemnify Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company.

### B.   There Is No Ambiguity As To Who Is An Additional Insured Under The MCC Insurance Contracts

Cothern is the named insured under the MCC Policies. Taylor Woodroe SW Florida Division is an additional insured under the first and second policies and Taylor Morrison of Florida Inc (from 7/21/08 to 1/10/09 for ongoing operations) under the second policy.[7] Under Florida law, the parties' intent is determined solely by the language of the policies unless the language is ambiguous. *Towne Realty v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988). Thus, in the absence of an ambiguity, a court may not look to parol evidence to ascertain the intent of the parties to a contract. *See Moore v. Pa. Castle Energy Corp.*, 89 F.3d 791, 795 (11th Cir. 1996); *Durham Tropical Land Corp. v. Sun Garden Sales Co.*, 106 Fla. 429, 138 So. 21, 23 (1931) ("The intention of the parties to a contract is to be deduced from language employed, and such intention, when expressed, is controlling, regardless of intention existing in the minds of parties."); *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993) ("As a general rule, in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence."); *see*

---

[7]    Again even though Woodroe is misspelled that does not mean that MCC ever intended to insure Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company.

*also* Lee R. Russ & Thomas F. Segalla*, Couch on Insurance* 3d § 137:6 (1997) (observing a contract of insurance is not to be construed beyond the intent expressed in the policy as determined by the fair and ordinary meaning of its terms).

In this case, the MCC Policies and the construction subcontract are clear and unambiguous. The named insured is listed in the declarations as "Cothern Construction Company." There are two additional insureds under the policies: Taylor Woodroe SW Florida Division and Taylor Morrison of Florida Inc—not Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company. Taylor Woodrow Communities at Visari and Taylor Woodrow Homes/Communities at SW Florida Division are two separate entities. (*See* Exhibits A & B). In this case one entity was required by the construction contract to be added as an additional insured, and it was. The other was not. To now include Taylor Woodrow Communities at Vasari, LLC a/k/a Taylor Morrison Construction Company as an additional insured would require the Court to rewrite the policy which is something the Court is not allowed to do. Since the insurance policy and construction contract are clear and unambiguous, the consideration of parol evidence outside these contracts is impermissible, thus making this case perfect for resolution on the pleadings. These contracts establish that the Plaintiff is not an additional insured under the MCC Policies. Accordingly, MCC's Motion for Judgment on the Pleadings should be granted.

### C.   Communities at Vasari Cannot Offer Any Basis To Reform The MCC Insurance Contracts

Communities at Vasari cannot meet the elements of reformation under Florida law and it does not even have the standing required to attempt it.

14494696v1  0904250  56475

### 1.      Communities At Vasari Cannot Meet The Elements Of Reformation

In Count IV of the Amended Complaint, Communities at Vasari attempts to reform the insurance contract MCC issued to Cothern not Communities at Vasari. (Amended Complaint ¶¶ 30-35).   Notably, Communities at Vasari is attempting to reform only the first insurance policy which was the "Woodroe(w)" misspelling and not the second policy which also names Taylor Morrison of Florida Inc and, based on that misspelling, transform Taylor Woodrow Communities at SW Florida Division into Communities at Vasari.   Contrary to the exhibits, Plaintiff alleges, that Cothern intended all along that Communities at Vasari be an additional insured in the MCC Policies and that the contract should be reformed to reflect this intent. (*Id*.). There are two fatal flaws with this position: (1) Cothern's construction subcontract specifically expressed the intent that Taylor Woodrow Communities at SW Florida Division was the party to be named as the additional insured as it, and not Communities at Vasari, contracted with Cothern for the construction of the homes; and (2) even assuming Cothern intended Communities at Vasari to be an additional insured, there is no allegation that MCC also had that intent. Therefore, there was no mutual mistake which is required to establish that it was the intent of the parties to the insurance contract (Cothern and MCC) to name Communities at Vasari as an additional insured under the MCC Policies.

In Florida, there is a "strong presumption arising from [an insurance] policy that it correctly expresses the intention of the parties.   With the presumption against reformation, it is not surprising that Florida courts require that parties seeking to reform a contract demonstrate not by a mere preponderance of the evidence, but rather by clear and convincing evidence, that the policy did not accurately reflect the parties' agreement." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 8 F.3d 760, 765 (11th Cir. 1993) (internal citations

12

omitted); *Niagara Fire Ins. Co. v. Allied Electrical Co.*, 319 So. 2d 594, 595 (Fla. 3d DCA 1975) ("The applicable rule for reformation is…the evidence must be clear and convincing and sufficient to overcome a strong presumption arising from the policy that it correctly expresses the intention of the parties."); *O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.*, 944 So. 2d 181 (Fla. 2006) (to determine the intent of the parties, a court looks to the words used in their contract.).  Based upon the subcontract and MCC Policies, it is clear that Communities at Vasari cannot meet its burden.

It is also well-established that unilateral mistake, rather than mutual mistake, is not enough to permit reformation. *Rosenthal v. First Nat'l Fire Ins. Co.,* 74 Fla. 371 (Fla. 1917). While some cases have allowed "inadvertence" or "simple mistake" to be grounds for reformation, these cases have been limited to facts such as where the insured was misnamed in the policy (*i.e.*, Woodroe instead of Woodrow or Taylor Woodrow Communities instead of Taylor Woodrow Homes), or where both parties to the contract intended an endorsement be included and that endorsement was inadvertently deleted from a policy (not the case here). *See Golden Door Jewelry,* 8 F.3d at 766; *Am. Fire & Indem. Corp. v. State Farm Auto. Ins. Co.*, 483 So. 2d 122, 123 (Fla. 1st DCA 1986) (holding that "contract cannot be reformed in the absence of mutual mistake").

The Cothern/Taylor Woodrow subcontract evidences those parties' intent that Cothern procure general liability coverage and name Taylor Woodrow Communities at SW Florida Division, as an additional insured, not  Communities at Vasari.  The construction contract is clear, Cothern intended Taylor Woodrow Communities at SW Florida Division as an additional insured-- the party it was contracting with.  In reality, Communities at Vasari is attempting to not

only reform the MCC Policies, but also the construction contract, even though it was a party to <u>neither</u>.

Further, even if this Court were to contemplate for a short second the refuted notion that Cothern intended for Communities at Vasari to be named as an additional insured under the MCC Policies, that is not a basis to reform the insurance contract.  Reformation of an insurance policy due to a failure of the policy to express the intended contract of the parties (Cothern and MCC) must be occasioned by a mutual mistake, as a unilateral mistake is no ground for reformation.  *USAA Cas. Ins. Co. v. Threadgill,* 729 So. 2d 476 (Fla. 4th DCA 1999) (citing *Blumberg v. American Fire & Cas. Co.*, 51 So. 2d 182, 184 (Fla. 1951)) (a mutual mistake sufficient to support reformation requires a showing that the parties agreed on one thing and when they put it in the contract they said something different).  *Daniel v. Florida Residential Property & Cas. Joint Underwriting Ass'n*, 718 So. 2d 936 (Fla. 3d DCA 1998) (citing *Rosenthal v. First Nat'l Fire Ins. Co.*, 77 So. 92 (Fla. 1917)); *see also Mustelier v. Consol. Mitt. Ins. Co.,* 296 So. 2d 634 (Fla. 3d DCA 1974).

*Mustelier* is instructive here.  In *Mustelier,* the insurance company sold a homeowner's policy to the insureds. The insureds' jewelry was stolen during the policy period.  They sued on the homeowner's policy and claimed losses that were covered under the policy as written up to $9,000.00. The insurance company counterclaimed and asked the court to reform the policy to limit its liability to $500 on the theft of jewelry. The company based its right to equitable reformation on an amendatory endorsement. The amendatory endorsement, however, referred to a subsection in the original policy that did not exist. *See Mustelier,* 296 So. 2d at 635-36. The trial court permitted the reformation and was reversed on appeal. The reviewing court admonished:

14

> The Supreme Court of Florida has held that a mutual mistake is necessary for the reformation of an insurance policy upon the grounds of mistake. [citations omitted]. Although the trial court based its decision upon its determination that it had ascertained the intent of the insurer and the insured, the record is devoid of any evidence that the appellants ever had any knowledge of the limitation. It is difficult to understand how the mistake made can be held to be mutual when there is no evidence to show that the policyholders were ever made aware of the intended limitation.   Accordingly, the final judgment reforming the insurance policy is reversed with directions to dismiss the counterclaim for reformation and to proceed with the cause upon the merits of appellants' claim under the policy.

*Mustelier,* at 636.  Like in *Mustelier*, here the contract between Cothern and Taylor Woodrow establishes that Cothern did not intend to name Communities at Vasari as an additional insured and Communities at Vasari's conclusory allegation that there was a mutual mistake in the face of these exhibits is insufficient to avoid the entry of judgment against it.  Simply, MCC could not have mistakenly excluded Communities at Vasari from the policy because *MCC was never advised Communities at Vasari was meant to be an insured*.  Rather, MCC was advised, based on the subcontract between Cothern and Taylor Woodrow, to add Taylor Woodrow as an additional insured and it did so in the initial policy (although misspelling "Woodrow" which is a non-issue here).  Therefore, MCC is entitled to the entry of judgment.

> **2.      Communities at Vasari Was Not A Party To The Construction Contract Or The Insurance Policies And Therefore Has No Standing To Either Reform The MCC Policies Or Assert A Breach Of Contract Claim Against MCC**

Since Communities at Vasari is not specifically named as an additional insured under any of the policies and the construction subcontract, its claims for reformation and breach of contract fail as a matter of law for this reason as well.  Courts have held that persons who are neither parties to, nor third-party beneficiaries of, a liability policy cannot seek reformation of the policy. *Sweetwater Country Club Homeowners' Ass'n, Inc. v. Huskey Co.,* 613 So. 2d 936, 939 (Fla. 5th DCA 1993) ("A showing of only an indirect, inconsequential, or contingent interest is wholly inadequate [to establish standing]."); *Googe v. Florida Intern. Indem. Co*., 422 S.E. 2d 552 (Ga.

1992) (survivors of a child who drowned in a county recreation department pool do not have standing to reform a policy purchased by the city)(certified question answered by *Googe v. Florida Intern. Indem. Co.,* 262 Ga. 546, 422 S.E.2d 552, 61 USLW 2351 (Ga. Nov 19, 1992) (answer to certified question conformed to *Florida Intern. Indem. Co. v. City of Metter, Ga.*, 984 F.2d 1138 (11th Cir. (Ga.) Mar 01, 1993).

It is also well-settled under Florida law that non-parties to a contract do not have standing to sue for breach of the contract. *See Am. Honda Motor Co., Inc. v. Cerasani*, 955 So. 2d 543, 544 (Fla. 2007) (dismissing the complaint because no privity existed between the plaintiff and the defendant); *Banco Ficohsa v. Aseguradora Hondurena, S.A.*, 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) ("[c]ourts have held that 'a person not a party to nor in privy with a contract does not have the right to sue for its breach.'") (citing *White v. Exchange Corp.*, 167 So. 2d 324, 326 (Fla. 3d DCA 1964)); *Greenacre Properties, Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006) ("[a]s a general rule, a person who is not a party to a contract cannot sue for a breach of the contract even if the person receives some incidental benefit from the contract.") (citing *Caretta Trucking v. Cheery Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994)); *Axiom Worldwide, Inc. v. Becerra*, 2009 WL 1347398, at *6 (M.D. Fla. May 13, 2009) (dismissing complaint where plaintiffs' failed to allege a valid contract between themselves and non-party defendants or the existence of other circumstances that would allow them to pursue a breach of contract action against non-parties).

The requirement of privity is equally applied to insurance contracts. *See Verhoeven v. Balboa Ins. Co.*, 2007 WL 4374222, at *4 (E.D. La. Dec. 13, 2007) (holding that plaintiff has no standing to bring a claim for benefits under an insurance policy because "[u]nder the clear language of the contract, [p]laintiff was not a named or additional insured under the … policy.");

*Postlewait Constr., Inc. v. Great American Ins. Cos.*, 720 P.2d 805, 806 (Wash. 1986) (holding that plaintiff, who was not named as an insured, a loss payee, or otherwise, was not an intended third-party beneficiary of an insurance contract and thus had no standing to sue an insurer for breach of the contract); *Williams v. Fidelity Nat. Ins. Co*., 2009 WL 2922310, at *4 (E.D. La. Sept. 08, 2009) ("[s]ince Plaintiffs are not listed as insureds or additional insureds in the policy and are not third-party beneficiaries to the policy, there is no legal relationship between Plaintiffs and Underwriters. Therefore, Plaintiffs lack standing to pursue their claims against Underwriters in this lawsuit.").

In *Georgia-Pacific LLC v. Hornady Truck Line, Inc*., 2009 WL 484629 (N.D. Miss. Feb. 26, 2009), for example, the court addressed the issue presented here.  In that case, Georgia Pacific LLC ("GP") entered into a carriage agreement with Hornady Trucking Line, Inc. wherein Hornady agreed to transport GP's trees.  Thereafter, a driver for Hornady was injured after falling off the back of his truck while unloading at a GP facility.  The driver filed an action against GP alleging that GP was solely liable for his injuries.  GP settled the suit for $35,000, in addition to paying attorneys' fees and costs totaling $103,155.36.  After settlement, GP filed suit against Hornady alleging that it breached the carriage agreement for failing to procure insurance covering GP for the trucker's claim.  GP also sued Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Hornady's insurance company, for: (1) breach of contract for failure to defend and indemnify GP; (2) negligence for failure to add GP as an additional insured on Hornady's policy; and (3) breach of contract by failing to indemnify GP as a third-party beneficiary.  The parties filed cross-motions for summary judgment.  In granted summary judgment for Liberty Mutual on all counts, the court emphasized the absence of a contractual

relationship between GP and Liberty Mutual was fatal to GP's claims under the policy.  The court noted:

> GP has cited no contractual relationship with Liberty Mutual nor any authorities imposing a duty upon Liberty Mutual, another party's insurer, to name GP as an additional insured. Rather, it was Hornady's contractual duty to cause GP to be named as an additional insured pursuant to ¶ 8 and Appendix A to the Contract Carriage Agreement.

Here, as in *Georgia-Pacific,* there is no contractual relationship whatsoever between Communities at Vasari and Cothern for the subject homes or MCC and Communities at Vasari. Further, unlike *Georgia-Pacific*, the construction contract did not call for Communities at Vasari to be named as additional insured.

Communities at Vasari has not even alleged that it is a third-party beneficiary under the contract between Cothern and MCC.  Rather they allege they were the contracting party even though Taylor Woodrow entered into that contract with Cothern.[8]  Even if they had, it would not have stated a viable cause of action.   An intended third-party beneficiary is one who is specifically recognized by the parties to an agreement to have a right of performance in order to effectuate the intent of the parties. Restatement (Second) of Contracts § 302(b); *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 811 (Fla. 3d DCA 1985). In order to state a claim for breach of third-party beneficiary contract, the "third-party must establish that the contract either expressly creates rights for them as a third-party or that the provisions of the contract primarily and directly benefit the third-party or a class of persons of which the third-party is a member." *Greenacre Properties, Inc.,* 933 So. 2d at 23.  Accordingly, Communities at Vasari would need to allege, which they have not: (a) that the policy expressly creates rights for it as a third-party, or (b) that the policy primarily and directly benefits it.  Here,

---

[8] Once again Communities at Vasari admits that the construction subcontract was between Cothern and Taylor Woodrow and where the exhibits contradict the allegations of the complaint, the exhibits control.

14494696v1  0904250 56475

it is undisputed that the policy does not mention Communities at Vasari or reference a class of beneficiaries that includes Communities at Vasari as a member.  The policy was intended to afford coverage, subject to its terms and conditions, to Cothern as its insured and Taylor Woodrow Communities/Homes SW Florida Division as an additional insured, not a separate and distinct company, Communities at Vasari.

Accordingly, Communities at Vasari as a stranger to both the insurance contract and construction subcontract lacks standing to reform either contract.  As such, MCC is entitled to the entry of judgment in its favor.[9]

### D.  Even if Communities At Vasari Possesses A Certificate Of Insurance It Does Not Mean It Is An Additional Insured

Communities at Vasari alleges in its Amended Complaint that it is a "certificate holder." (Amended Complaint ¶ 15).  It then attaches the first MCC policy to support that statement. *Id.* First, the policy names Cothern as its insured.  It further names Taylor Woodrow as the additional insured.  There is no certificate of insurance attached to exhibit "A." (DE 34, Exhibit A.).  Further, even if Communities at Vasari attached a certificate of insurance naming it as a certificate holder, that is not dispositive that it is an additional insured under the MCC Polices as the policies and not the certificate of insurance determines who is actually an insured under the

---

[9]    Plaintiff may rely on *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677 (11th Cir. 1999).  In that case, a hospital brought a breach of contract suit against a health insurer due to the insurer's failure to fully pay for services allegedly covered by its policy. *Id.* at 679-80. The insurer argued that the hospital could not bring the suit because the policies at issue were between the insurer and the patients, not between the insurer and the hospital. *Id.* at 680.  The hospital responded by arguing that it was a third-party beneficiary of the insurance contracts.  *Id.* The Eleventh Circuit's opinion focused entirely on the language in that insurance contract, which is not found in the MCC contract which stated: "Benefit payments may be paid to the doctor, hospital or to you directly at our discretion." *Id.* Based upon this express language, the court of appeals held: "By providing for payment directly to the hospital, the contracting parties showed a clear intent to provide a direct benefit to Vencor (or any other service-providing hospital), and thus Vencor has standing to bring this suit." *Id.*  Furthermore, the contracts at issue on *Vencor* were first party health policies as opposed to third party commercial general liability policies.

14494696v1  0904250  56475

policy. *See Becks v. Emery-Richardson, Inc.*, 1990 WL 303548 (S.D. Fla. 1990) (a certificate of insurance merely advised the certificate holder that a policy exists and the coverage provided by the policy cannot be altered by the certificate of insurance).

More recently, the Southern District of Florida addressed the impact of a certificate of insurance on an insurance policy. *See National Union Fire Ins. Co. v. Liberty Mut. Ins. Co.*, 2008 WL 544732 (S.D. Fla. Feb. 26, 2008)   In *National Union*, National Union sought reimbursement from Liberty Mutual for its defense and settlement of the underlying liability action, which resulted from injuries sustained by a movie patron when portions of the ceiling struck her during the course of a movie.   The coverage issues were based upon an underlying lease agreement between Mission Bay (landlord) and General Cinema (tenant), whereby each party agreed to indemnify the other for their own negligence. *Id*. at *4.  Liberty Mutual issued a policy to General Cinema, and National Union issued a policy to Mission Bay.   *Id*. at *3. Additionally, Liberty Mutual issued a certificate of insurance, on Liberty Mutual letterhead, that listed Mission Bay as an additional insured.  The certificate of insurance in *National Union* was the industry standard "Acord" form and included the following language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON YOU THE CERTIFICATE HOLDER. THIS CERTIFICATE IS NOT AN INSURANCE POLICY AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES LISTED BELOW.
>
> The insurance afforded by the listed policy(ies) is subject to all their terms, exclusions and conditions and is not altered by any requirement, term or condition of any contract or other document with respect to which this certificate may be issued.

*Id*. (citations omitted).

The court determined that the lease agreement did not obligate General Cinema to indemnify Mission Bay for its own negligence.   *Id*. at *5.  The court did, however, address

20

Liberty Mutual's certificate of insurance that named Mission Bay as an additional insured.  The court wrote:

> The certificate of insurance was intended to demonstrate to Mission Bay, as well as to Schmier and LaSalle, that there was insurance in place, consistent with General Cinema's obligations under the lease. Even though the lease did not entitle Schmier and LaSalle to additional insured status under the policy, the certificate of insurance gave them that status. As such, under the certificate of insurance, Schmier and LaSalle were to be indemnified and provided with coverage for General Cinema's negligence, but the certificate of insurance did not provide for indemnification and coverage for Mission Bay, Schmier and LaSalle's own negligence. In other words, the certificate of insurance did not provide them with coverage in excess of what the policy provided. This is evidenced by the certificate of insurance's express provision that it did not amend, extend or alter the coverage provided under Liberty Mutual's policy. Significantly, the Liberty Mutual's policy did not provide coverage for the additional insured's own negligence. Thus, Schmier and LaSalle were entitled to no more under the policy than what the policy gave to Mission Bay.

*Id*. at \*6.  (emphasis added).  Therefore, even if Communities at Vasari actually had a certificate of insurance (and attached it to the complaint), the certificate would not mean it is an additional insured.  Only the policies decide that issue.  In this case, based upon the MCC policies which are attached to the complaint, Communities at Vasari is not named as an additional insured.

## CONCLUSION

For all of the foregoing reasons, MCC respectfully requests this Court for an entry of judgment in its favor and against Plaintiffs finding that MCC owes no duty to defend or indemnify the Plaintiff.

Respectfully submitted,

HINSHAW & CULBERTSON, LLP

S/ RONALD L. KAMMER
**Ronald L. Kammer**
Florida Bar No. 360589
rkammer@hinshawlaw.com
**Pedro E. Hernandez**
Florida Bar No. 30365
phernandez@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard, Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Attorneys for Defendant Mid-Continent Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Neal A. Sivyer, Esq., and Stephen E. Walker, Esq., Sivyer, Barlow & Watson, P.A., Suite 2225, 401 E Jackson St., Tampa , FL 33602.

s/Ronald L. Kammer
Ronald L. Kammer
rkammer@hinshawlaw.com

22